UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23195-CIV-COOKE/BANDSTRA

MARIA RODRIGUEZ,

      Plaintiff,

vs.

JONES BOAT YARD, INC., a Florida
corporation, and VICTOR BARED, an individual,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendants' Motion for Summary Judgment (D.E. 25) filed on April 23, 2010. On June 28, 2010, this motion was referred to the undersigned for appropriate disposition by the Honorable Marcia G. Cooke pursuant to 28 U.S.C. §636(b)(1)(A) and the parties' Consent and Election to Jurisdiction by United States Magistrate Judge Ted E. Bandstra (D.E. 41).[1] Accordingly, the undersigned conducted a hearing on this motion on January 9, 2010. Following full review of the pleadings, all exhibits and attachments thereto, the deposition transcripts submitted by the parties and

---

[1] The parties have consented to the undersigned Magistrate Judge conducting all proceedings in this case, including trial, with the exception of the instant motion for summary judgment. Therefore, the undersigned submits a Report and Recommendation to this Court on this motion with the understanding that all further proceedings will be conducted by the undersigned should this motion be denied.

applicable law, the undersigned recommends that Defendants' Motion for Summary Judgment be GRANTED for reasons explained below.

## INTRODUCTION

This is an action for unpaid wages brought by plaintiff, Maria Rodriguez, under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, against her alleged employers, Victor Bared and Jones Boat Yard, Inc. (collectively "defendants"). Plaintiff, in her amended complaint, alleges that Jones Boat Yard provides services for yachts and boats throughout the United States generating in excess of $500,000 per annum. Am. Cpt. ¶¶ 8, 12. Plaintiff further alleges that she was employed by defendants "as a live-in domestic providing general housework and companionship services... for Ofelia Bared" between May 3, 2000 and August 25, 2009. [2] Am. Cpt. ¶¶ 6, 8. Plaintiff alleges that she worked an average of 119 hours per week in this capacity for an average hourly wage of $2.73. Am. Cpt. ¶¶ 7,8. Plaintiff asserts identical claims against each defendant for minimum wage violations under the FLSA.[3]

---

[2] Ofelia Bared is the mother of defendant Victor Bared who, according to plaintiff's deposition testimony, lives alone in Miami, Florida. Plaintiff does not allege that she provided any employment services for Jones Boat Yard or Victor Bared other than household work and companion services for Ofelia Bared who has no ownership or other business relationship with Jones Boat Yard. Victor Bared is the alleged director and owner of Jones Boat Yard.

[3] Count I is a claim for "wage and hour" violations against Jones Boat Yard and Count II is the same claim against Victor Bared. Plaintiff's amended complaint deletes a previously asserted claim for retaliatory discharge and allegations of a collective action brought on behalf of other similarly situated persons.

Defendants' Motion for Summary Judgment seeks dismissal of both claims on the grounds that plaintiff was not employed by either Jones Boat Yard or Victor Bared but rather as a companion and housekeeper for Ofelia Bared. Defendants assert the "companionship services" exception to the FLSA which exempts plaintiff from the FLSA's minimum wage provisions. Defendants rely primarily on plaintiff's deposition testimony in which she described in detail her duties for Ofelia Bared and the time spent on such duties. Plaintiff attempts to defeat defendants' motion by filing a post-deposition affidavit "clarifying" her deposition testimony.

## STANDARD OF REVIEW

The court in reviewing a motion for summary judgment is guided by the standards set forth in Rule 56(c) of the Federal Rules of Civil Procedure which provides as follows:

> .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ....

The moving party bears the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970). Further, in addressing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982), citing, Adickes v. S.H. Kress & Co., 398 U.S. at 157, 90 S.Ct. at 1608; Augusta Iron & Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). If the

record presents issues of material fact, the court must deny the motion. Adickes v. S.H. Kress & Co., 398 U.S. at 157, 90 S.Ct. at 1608. The non-moving party, however, cannot rest upon mere allegations, but must rebut any facts properly presented by the moving party through affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. Id. at 398 U.S. 155, 90 S.Ct. at 1607. Moreover, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53 (1986).

## FINDINGS OF FACT[4]

Plaintiff is a Nicaraguan national who worked as a "live-in domestic" providing companionship and household services for Ofelia Bared, an elderly woman, in her Coral Gables apartment between May 2000 and August 2009. Plaintiff came to the United States in March 2000 and began working as Ms. Bared's "assistant" on May 1, 2000. Plaintiff was hired by Ms. Bared and worked in her home every day for over nine years.

Plaintiff began her duties each day at 7:00 a.m., and finished each day at 11:00 p.m.

---

[4] These factual findings are based primarily on the sworn testimony of plaintiff and Victor Bared as well as certain exhibits described herein which were attached to the pleadings. Plaintiff's affidavit, submitted nearly two months after her deposition, is not considered because it directly conflicts with plaintiff's deposition testimony and should be stricken under *Stevens v. SimplexGrinnell, LLP.*, 190 Fed. Appx. 768, 771 (11th Cir. 2006) (affidavit in FLSA case was properly stricken where it directly contradicted substantial portions of deposition testimony); and *Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("Such an affidavit would be a sham").

Plaintiff assisted Ms. Bared each day by helping her get out of bed, assisting with her bath, drying and combing her hair, and moving her to the living room. Ms. Bared was elderly (in her eighties) throughout plaintiff's employment for her and required constant and considerable care-taking throughout the day. Thus, plaintiff performed many such duties for her including preparation of all of her meals, dressing her and caring for her clothing, buying necessary ointments to control her psoriasis, testing and administering her insulin, and assisting her during meals ("to be sure no food got stuck in her throat"). After breakfast, plaintiff would take out Ms. Bared's dog and tend to its needs before returning to the apartment to clean the breakfast dishes, make Ms. Bared's bed and wash and clean her bathroom. Plaintiff would then clean the one bedroom apartment by dusting and sweeping the floor.

Plaintiff performed all of these duties as needed by Ms. Bared and at her instruction. Additional duties including the preparation of her pills and assisting with "movement therapies" for fifteen minutes each day. Plaintiff cooked and prepared Ms. Bared's lunch and dinner and cleaned the dishes after each meal. Plaintiff also helped Ms. Bared with walking exercises after her daily nap. Plaintiff performed these duties every day, seven days a week, for the years she worked for Ms. Bared.

Plaintiff also went to the drug store twice a week to buy medications for Ms. Bared as prescribed by her numerous physicians. Plaintiff tested Ms. Bared's insulin levels each day and administered necessary medications. Ms. Bared always wanted plaintiff to stay close to her, talking to her and messaging her feet in the evening. Ms. Bared was afraid to be left alone after 7:00 p.m. so plaintiff stayed with her each evening until 10:30 p.m. when plaintiff brought Ms. Bared milk and toast before her bedtime at 11:00 p.m. Plaintiff

then retired to her own room in the same apartment and went to bed about 11:30 p.m.

Plaintiff's constant care for Ms. Bared included additional duties such as grocery shopping ("once a month"), keeping track of her doctors' appointments, requesting transportation for medical visits, and monitoring Ms. Bared's bank statements and bills. Plaintiff occasionally accompanied Ms. Bared to "theatres" and shopping at Macy's and Sears. Ms. Bared needed plaintiff's constant care as her physical condition worsened and she required a wheelchair to move about the apartment. Ms. Bared was hospitalized on three occasions which required plaintiff to spend "day and night" by her bedside taking care of her. Ms. Bared had four adult children but they seldom visited her home or assisted her during her hospitalizations.

Plaintiff was paid $700.00 per month by Ms. Bared plus room and board. Ms. Bared paid plaintiff by checks made out to "cash" from her personal checking account. Beginning in September 2006, plaintiff was paid $275.00 per week after Ms. Bared's health deteriorated requiring even more care. In May 2007, plaintiff salary was raised to $325.00 per week when she was placed on the payroll of Jones Boat Yard - - a company owned by her son, Victor Bared.[5] Plaintiff was then paid by Jones Boat Yard until August 2009 when her employment was terminated.

Plaintiff performed no services for Jones Boat Yard or Victor Bared, even though paid by the boat yard. Rather, plaintiff worked only for Ms. Bared as a caretaker,

---

[5] The testimony of plaintiff and Victor Bared is conflicting with respect to the reason plaintiff was placed on the payroll of Jones Boat Yard. Plaintiff believes this was done to prevent Ms. Bared from losing social security benefits. Victor Bared testified that plaintiff requested this to assist her "to become legal" which he agreed to do at the insistence of his mother. Whatever the reason, plaintiff was never employed by either Victor Bared or Jones Boat Yard regardless of the source of her salary.

companion and housekeeper. Victor Bared never supervised the duties she performed for his mother and she never performed any work for Victor Bared other than taking care of his dog on one occasion when he went on vacation. Plaintiff's housekeeping responsibilities for Ms. Bared were always incidental to her working as a personal "assistant" to her. Such duties never took more than 20% of her work week at any time during her employment.

## ANALYSIS

Defendants move for summary judgment in their favor on the grounds that (1) plaintiff is exempt from the minimum wage provisions of the FLSA under the "companionship services" exception, 29 U.S.C. § 213(a)(15); and (2) as a matter of economic reality in that neither defendant was plaintiff's "employer" under the FLSA. Defendants note that the amended complaint alleges that plaintiff worked as a "live-in domestic providing general housework and companionship services... for Ofelia Bared." Am. Cpt. ¶ 6. Defendants argue, based on plaintiff's deposition testimony, that plaintiff's "general household work" for Ms. Bared was only incidental to the companionship services she provided for her elderly employer and did not exceed 20% of the total weekly hours she worked for her. Alternatively, defendants argue that neither Jones Boat Yard nor Victor Bared were plaintiff's "employer" under the economic reality test recognized by federal courts for determining this issue in FLSA cases.

Plaintiff refutes defendant's arguments and objects to summary judgment in their favor on the grounds that the "companionship services" exception is not applicable here

because of the "general maintenance services" she provided to Ms. Bared's guests and family which took more than 20% of her time on a weekly basis. Plaintiff argues that her deposition in which she stated that "almost 100% of her time" was spent providing companionship services to Ms. Bared does not foreclose the possibility that less than 80% of her time was actually "devoted" to Ms. Bared. Plaintiff asks the Court to disregard her deposition testimony and look to her conflicting affidavit submitted nearly two months after her deposition in which she explains that she spent "approximately 20% to 25%" of her working time doing "general household work" at Ms. Bared's home. Pl. Affd. ¶ 7. Plaintiff also argues that she was employed by Jones Boat Yard and Victor Bared because she was on the payroll of the boat yard and received paychecks from Jones Boat Yard beginning in mid-2007. Plaintiff asks the Court to disregard her deposition testimony where she stated that she performed no work for Jones Boat Yard ("no I was only on their payroll") but rather acted "as a housemaid" for Ms. Bared. Pl. Affd. ¶ 14. Plaintiff urges the Court to find facts in dispute - - based primarily on her self-serving, conflicting affidavit - - which can only be resolved by a jury.[6]

Reviewing the facts of this case and applicable law, the undersigned finds that plaintiff worked only for Ms. Bared and is exempt from the minimum wage provisions of the FLSA under the "companionship services" exception. As a preliminary matter, the

---

[6] The undersigned also recommends that plaintiff's affidavit be stricken because it directly conflicts with her deposition testimony two months earlier. Reviewing her deposition transcript taken with the assistance of an interpreter, the undersigned finds that plaintiff's counsel made no attempt to clarify any "misunderstandings" of plaintiff during the deposition and, in fact, asked no questions whatsoever. Rather, plaintiff's counsel advised the court at the hearing on this motion that he intentionally decided to wait to file a "clarifying" affidavit which he believes creates questions of fact which require a jury trial.

undersigned recognizes that the FLSA, subject to certain exceptions, mandates that every employer pay each of his or her employee a minimum wage. 29 U.S.C. §206(a)(1). The FLSA specifically covers "employees in domestic service" who work in a household more than eight hours in the aggregate per week. 29 U.S.C. § 206(f). However, there is an exception for employees in domestic service who "provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213 (a)(15).

The United States Department of Labor's regulations have further clarified the "companionship services" exception. Specifically, 29 C.F.R. § 552.6 provides:

> As used in section 13(a)(15) of the Act, the term *companionship services* shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided, however*, that such work is incidental, *i.e.*, does not exceed 20 percent of the total weekly hours worked. The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse... (emphasis in original).

"The companion must perform the services with respect to the aged or infirm persons and not generally to other persons." 29 C.F.R. § 552.106. Workers paid by third parties are subject to this exception and related regulations. See *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 169 (207); *Buckner v. Florida Habilitation Network, Inc.*, 489 F.3d 1151, 1153 (11th Cir. 2007).

Plaintiff's work as a "live-in domestic providing general housework and companionship services" for Ofelia Bared fits squarely within the "companionship services"

exception to the FLSA. Plaintiff described her duties in detail during her near five-hour deposition. Plaintiff was hired by Ms. Bared and worked for this elderly and infirm woman performing a variety of personal hygiene and other services for her made necessary by Ms. Bared's inability to care for her own needs. Plaintiff's typical daily services included helping Ms. Bared out of bed, washing her, dressing her, preparing her meals, cleaning her dishes, assisting her with medications, washing her clothes and bedding, reading to her, and sitting with her in the evening due to fear of being alone. Plaintiff also did some general household work such as meal preparation for Ms. Bared and her occasional visitors, walking the dog, dusting furniture and sweeping or mopping the floor. Such duties, however, were always related to her care of Ms. Bared and were "incidental" to her in that those chores did not exceed (or come close to exceeding) 20% of the total hours worked each week.

Reaching this conclusion, the undersigned finds support in several cases cited by defendants which apply the companionship services exception in similar settings. Our own district court, in *Corrales v. Bello*, 2009 WL 302271, *1(S.D. Fla. 2009) (Moreno, J.) recently dismissed an FLSA case after finding that "employees such as Plaintiff who provided companionship services for defendant's paralyzed father, are *not covered* under the FLSA and Defendants are *not* required to pay Plaintiff a minimum wage." Despite the plaintiff's contention in *Corrales* that discovery might reveal that she did "general household work" unrelated to the care of the father, this Court dismissed the contention given the detailed allegations in the complaint regarding the health and condition of the father and the "around the clock" care he needed. In the instant case, plaintiff here provided the same

care for Ms. Bared on a nearly constant basis.

Similarly, in *Sayler v. Ohio Bureau of Workers' Compensation*, 83 F.3d 784, 787 (6th Cir. 1996), the Sixth Circuit affirmed a summary judgment finding that care-taking services that a wife provided to her husband fell within the companionship exception. In *Sayler*, the wife "help[ed] her husband rest, g[ave] him his medication, help[ed] him bathe, assist[ed] him in getting around their home, and clean[ed] his bedclothes when he los[t] control of his bowels." *Id.* at 787. "These sorts of services fall squarely within the plain language of the statutory definition of 'companionship services,' i.e., services 'for individuals who (because of age or infirmity) are unable to care for themselves.'" *Sayler*, 83 F.3d at 787. "Because those services 'may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services,' we find the regulation to be directly on point." *Id.* at 787. Once again, plaintiff performed the same services for Ms. Bared in this case.

Finally, the district court in *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, 2009 WL 1086935, *3-4 (E.D.N.Y. 2009), addressed the issue of what constitutes "general household work" that would implicate the "20%" exception to the exemption. In analyzing the issue, the Court turned to "a DOL opinion letter, dated March 15, 1995, which interprets the companionship exemption and 29 C. F.R. § 552.6. The [DOL] opinion letter begins by setting forth the definition of "companionship services" contained in § 552.6. It goes on to state:

> [I]t is our [DOL's] opinion that such activities as *cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt* work for purpose of section

11

> 13(a)(15) of the FLSA. However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation.

*Torres*, 2009 WL 1086935 at *4 (noting DOL opinion letter can be found at 1995 WL 1032475, 1995 DOLWH LEXIS 22) (emphasis added). In *Torres*, the court found that "[n]one of plaintiffs' work constitutes "heavy cleaning" as described in the opinion letter...." Id. "According to the opinion letter's interpretation, therefore, all of plaintiffs' work as alleged in the complaint would constitute household work related to the care of the client, and plaintiffs would fail to state a claim." *Torres*, 2009 WL 1086935 at **3-4. Here, as in *Torres*, nearly all of plaintiff's work related to the personal care of Ms. Bared which is exempt under section 13(a)(15).

Finding that plaintiff's work for Ms. Bared fits squarely into the companionship services exception, the undersigned only briefly addresses the issue of whether defendants were plaintiff's "employer" for FLSA purposes. Defendants correctly note that the issue of employer status under FLSA is determined by the "economic reality" of the relationship. *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947); *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996). "[T]he 'economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer" are considered. *Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994), *cert. denied*, 513 U.S. 943 (1994). Thus, the courts should look at the surrounding circumstances of the whole activity. Several factors are utilized to assess the economic reality of the relationship:

> In determining whether a joint employment relationship exists, the courts

consider several relevant factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. See *Antenor*, 88 F.3d at 932 (citing *Aimable*, 20 F.3d at 440-45); *Santelices v. Cable Wiring*, 147 F.Supp. 2d 1313, 1326 (S.D. Fla. 2001).

*Jeanneret v. Aron's East Coast Towing, Inc.*, 2002 WL 2114470, *3 (S.D. Fla. 2002), *aff'd*, 54 Fed. Appx. 685 (11th Cir. 2002). See also *Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183, 1186-87 (S.D. Fla. 2005).

Here, plaintiff presents evidence of only one factor, preparation of payroll and payment of her wages, for a period of time beginning in mid-2007 in support of her position. This single factor alone does not mean that either Jones Boat Yard or its owner, Victor Bared, were plaintiff's employer - - particularly in light of plaintiff's deposition testimony that she performed absolutely no work for either Jones Boat Yard or Victor Bared in any time during her employment.

## SUMMARY

In summary, the undersigned finds that defendants have established the applicability of the companionship services exception so that they are entitled to summary judgment at this time. Finding no material facts in dispute concerning this exception, the undersigned recommends that Defendants' Motion for Summary Judgment be GRANTED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Marcia G. Cooke, United States District Judge, within ten (10) days of receipt. *See* 28 U.S.C. § 636(b)(1)(c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982); *cert. denied*, 460 U.S. 1087 (1983); *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn.*, 474 U.S. 140 (1985), reh. denied, 474 U.S. 1111 (1986)

**RESPECTFULLY SUBMITTED** this 26th day of July, 2010 at Miami, Florida.

_____
Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:

Honorable Marcia G. Cooke

All counsel of record